| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------X<br>:<br>AVENUE INNOVATIONS, INC.,          :<br>:<br>                             Plaintiff,   :<br>:<br>                   v.                    :<br>:<br>E. MISHAN & SONS INC.,                    :<br>:<br>                            Defendant.   :<br>:<br>------------------------------------------------------X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>May 11, 2018</u><br><br>16 Civ. 3086 (KPF)<br><br>OPINION AND ORDER |

KATHERINE POLK FAILLA, District Judge:

      Plaintiff and patent holder Avenue Innovations, Inc. brought this action against Defendant E. Mishan & Sons Inc. alleging infringement of U.S. Patent No. 6,340,189 (the "'189 patent"). Since 2003, Plaintiff has sold the Handybar as a device to be used for assistance getting into or out of a vehicle; in 2015 Defendant brought to market a device called the Car Cane that is also used to assist with entering and exiting a vehicle. Before the Court is the parties' dispute over the proper construction of the claim phrase "operative position most convenient to the user." The Court held a *Markman* hearing on June 22, 2017, to hear the parties' arguments. Plaintiff contends this claim term needs no construction and should be given its ordinary meaning; Defendant argues that it fails as indefinite. For the reasons that follow, the Court agrees with Defendant and finds that Claims 1 and 2 of the '189 patent are invalid.

# BACKGROUND[1]

## A. Factual Background

On January 22, 2002, the '189 patent, titled "Universal Device for Facilitating Movement into and out of a Seat," was issued to Dr. William Pordy, and the patent was assigned to Plaintiff on January 8, 2003. (Compl. ¶¶ 1, 8). The patent is for a device that contains an "elongate member" on one end with a handle that can be gripped and an "engaging member" on the other end that can be used to secure the device on a surface or into a striker, thereby enabling the user to push or pull on the device to stand. ('189 patent abstract).

By way of background, Dr. Pordy applied for the patent on December 17, 1999, and on January 30, 2001, the United States Patent and Trademark Office ("PTO") rejected many of the proposed claims. (Prosecution 79-85). Claims 1 and 2 — the claims containing the disputed term — were initially "rejected under 35 U.S.C. [§] 102(b) as being anticipated by [prior art patented by] Bergsten." (*Id.* at 83). To overcome the PTO's rejection, Dr. Pordy amended Claims 1 and 2 to add the language: "said securement means mounting said

---

[1]  In resolving this claim construction motion, the Court considers the briefing submitted by the parties, and for convenience refers to Plaintiff's opening claim construction brief as "Pl. Br." (Dkt. #60), Defendant's claim construction brief as "Def. Br." (Dkt. #61), and Plaintiff's reply claim construction brief as "Pl. Reply" (Dkt. #62). The Court also refers to the prosecution history of the '189 patent, which is attached as a composite exhibit to Plaintiff's brief. (Dkt. #60-1 ("Prosecution")). The Court will cite to the prosecution history by reference to the page numbers assigned by the Court's electronic case filing system, e.g., "Prosecution 1." The nature of the parties' dispute over the claim terms narrowed appreciably after the parties' briefs were submitted, and accordingly the Court will not address any portions of the parties' briefs rendered moot by their subsequent agreement. Finally, the Court thanks the parties for their very capable advocacy at the June 22, 2017 *Markman* hearing, which advocacy greatly aided the Court's resolution of this dispute. The Court will at times reference the transcript of the *Markman* hearing, and will refer to it as "Oral Arg. Tr." (*See* Dkt. #71).

elongate member for limited movements within a plane substantially parallel to the fixed surface to at least one operative position most convenient to the user when pulling or pushing on said handle." (*Id.* at 87-88, 101-02). Dr. Pordy explained that this language was added to "more fully define the device" and draw a distinction between his application and Bergsten. (*Id.* at 99). Specifically, the amendment made clear that, unlike Bergsten, the proposed device was a movable object that the user could manipulate into various positions. (*Id.*). The parties now contest the definiteness of this language.

The disputed language appears in Claims 1 and 2. Claim 1 reads as follows:

> 1. A device for facilitating movement into and out of a seat, comprising an elongate member having a handle at one end suitable for being gripped by an individual, and securement means cooperating with the other end of said elongate member for securing said elongate member to a fixed surface proximate to a seat to enable said elongate member to extend away from the seat and position said handle at a point remote from the seat during use for providing support to the user independently of whether the user pulls on said handle in a direction generally upwards or pushes on said handle in a direction generally downwards, said securement means mounting said elongate member for limited movements within a plane substantially parallel to the fixed surface to at least one *operative position most convenient to the user* when pulling or pushing on said handle.

('189 patent col. 13:48-62 (emphasis added)). Claim 2 reads as follows:

> 2. Device for facilitating egress and/or ingress of any passenger and/or a driver from a vehicle having a door opening through which said individual(s) can move into or out of a seat in the vehicle and having a post or pillar to one side of the seat that defines a lateral surface

3

> generally proximate to the individual; the device comprising an elongate member having a handle at one end suitable for being gripped by the individual and securement means cooperating with the other end of said elongate member for removably securing said elongate member to lateral surface to enable said elongate member to extend away from the lateral surface during use and position a portion of said handle exteriorly of the vehicle and for providing a support for the passenger to grip while entering or leaving said vehicle independently of whether the passenger pulls on said handle in a direction generally upwards or pushes on said handle in a direction generally downwards, said securement means mounting said elongate member for limited movements within a plane substantially parallel to the fixed surface to at least one *operative position most convenient to the user* when pulling or pushing on said handle.

(*Id.* at col. 13:63–col. 14:13 (emphasis added)).

**B.     Procedural Background**

Plaintiff initiated this action on October 9, 2015, in the United States District Court for the Eastern District of Texas. (Dkt. #1). This case was transferred to this District on April 26, 2016, and the Court held an initial pretrial conference with the parties on June 3, 2016. (June 3, 2016 Minute Entry). In accordance with the Court's scheduling order, Plaintiff filed its opening claim construction brief on December 30, 2016 (Dkt. #60), Defendant filed its responsive brief on January 27, 2017 (Dkt. #61), and Plaintiff filed its reply brief on February 3, 2017 (Dkt. #62). The Court held a hearing under *Markman* v. *Westview Instruments, Inc.*, 517 U.S. 370 (1991), on June 22, 2017. The parties substantially narrowed their dispute regarding claim terms in advance of the hearing (*see* Dkt. #70), and on September 16, 2017, submitted a proposed order to the Court regarding their agreed-upon

4

construction. (Dkt. #73). The Court enters that order under separate cover today.

## DISCUSSION

**A.     Applicable Law**

   **1.     Claim Construction Generally**

The proper construction of a patent claim is a question of law for the Court. *Teva Pharms. USA, Inc.* v. *Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). As has been said: "The name of the game is the claim." *Apple Inc.* v. *Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (internal quotation marks and citation omitted), *overruled by Williamson* v. *Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). Indeed, the purpose of patent claims is to "define the invention to which the patentee is entitled the right to exclude." *Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). To determine the proper meaning of patent claim terms, courts look first to intrinsic evidence — the patent and its prosecution history — but may also consider extrinsic evidence such as expert testimony, dictionaries, and treatises. *Id.* at 1317.

Patent claims "are generally given their ordinary and customary meaning," which the Federal Circuit has explained is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (citations omitted). A "person of ordinary skill in the art" is an inventor or "others of skill in the pertinent art" who are "deemed to read the claim term not only in the context of the particular claim in which

the disputed term appears, but in the context of the entire patent, including the specification." *Id.*; *see also Multiform Desiccants, Inc.* v. *Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998) ("The inventor's words that are used to describe the invention … must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology."). The claims themselves provide "substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. Moreover, *Phillips* counsels that a court should review disputed claim terms in light of the patent as a whole — to avoid inconsistent usage of claim terms — and its specification, which "is the single best guide to the meaning of a disputed term." *Id.* at 1315. But while the specification is an important guide to interpreting claim terms, a court may not "import[] limitations from the specification into the claim," a line that the Federal Circuit has acknowledged is a fine one. *Id.* at 1323 (citing *Comark Commc'ns, Inc.* v. *Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998)).

Intrinsic evidence also includes the prosecution history, if it is in evidence, *Vitronics Corp.* v. *Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), and it can be used to "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be," *Phillips*, 415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83). While the prosecution history can inform claim construction, it "cannot 'enlarge, diminish, or vary' the limitations in the

6

claims." *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (quoting *Goodyear Dental Vulcanite Co.* v. *Davis*, 102 U.S. 222, 227 (1880)).

### 2. Indefiniteness

One facet of the validity of a patent concerns the definiteness of its claims; summarily speaking, an indefinite claim is an invalid claim. *See generally* 35 U.S.C. § 112. "Indefiniteness is a matter of claim construction, and the same principles that govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc.* v. *ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) (quoting *Datamize, LLC* v. *Plumtruee Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005)). Like claim construction, the question of indefiniteness is a question of law for the Court. *ePlus, Inc.* v. *Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Under 35 U.S.C. § 112, every patent must contain claims that set out what "the applicant regards as his invention" — this is, in effect, "a public notice function, ensuring that the patent specification adequately notifies the public of the scope of the patentee's right to exclude." *Praxair*, 543 F.3d at 1319.

While patents need not set forth the parameters of an invention with complete precision — "[s]ome modicum of uncertainty … is the price of ensuring the appropriate incentives for innovation" — a patent "viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc.* v.

7

*Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2128-29 (2014) (internal quotation marks and citations omitted). The *Nautilus* Court clarified that a patent claim is not definite simply because "a court can ascribe *some* meaning to a patent's claims" in a *post hoc* review, *id.* at 2130, and it is thus "not enough ... to identify *some standard* for measuring the scope of the phrase," *Interval Licensing LLC* v. *AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed Cir. 2014) (internal quotation marks and citations omitted). To withstand definiteness review, a claim must contain objective boundaries to provide sufficient notice to those of skill in the art to understand the invention. *Id.* at 1371; *Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018). While claim terms can be defined by way of examples in the specification, the use of examples will not always provide a sufficiently definite boundary. *Interval Licensing*, 766 F.3d at 1373-74 (citing *Enzo Biochem, Inc.* v. *Applera Corp.*, 599 F.3d 1325, 1336 (Fed. Cir. 2010)).

In sum, where "a skilled artisan is still left to wonder what other forms" of the device in question fall into the ambit of the inventor's patent, a claim is not sufficiently definite to inform the relevant audience the scope of what the inventor has reserved the right to exclude. *See Interval Licensing*, 766 F.3d at 1374. "A lack of definiteness renders the claims invalid." *Berkheimer*, 881 F.3d 1363 (citing *Nautilus,* 134 S. Ct. at 2125). Defendant bears the burden to prove any fact supporting its challenge by clear and convincing evidence.[2]

---

[2] While patents may only be invalidated on clear and convincing evidence, "[m]any claims of invalidity rest ... not upon factual disputes, but upon how the law applies to facts as given," and thus "[w]here the ultimate question of patent validity turns on the correct

8

*Microsoft Corp.* v. *i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011). (*See also* Oral Arg. Tr. 8:10-15).

**B. Analysis**

To review, Claims 1 and 2 of the '189 patent describe a device designed to assist a user with moving into or out of a seat, such as a car seat, and by mounting the device to a surface such that it can be placed in "at least one operative position most convenient to the user when pulling or pushing on said handle." '189 patent, col. 13:58-62; *id.* at col. 14:12-14. The parties dispute the definiteness of "operative position most convenient to the user." Plaintiff believes this phrase needs no construction because it is "understandable to a person of ordinary skill in the art based on the plain meaning of the claim terms, the figures, and the specification." (Dkt. #59 (Amended Joint Disputed Claim Terms Chart)). Defendant, on the other hand, believes the term is indefinite because it is "impermissibly subjective" insofar as different users may have different views on convenience depending on their personal preference such that the invention cannot be defined by objective criteria. (*Id.*; Def. Br. 7-16). Ultimately, the Court agrees with Defendant.

**1. Intrinsic Evidence**

The Court begins with the claim language read as a whole. *See Cox Commc'ns, Inc.* v. *Sprint Commc'n Co., LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (emphasizing the importance of reading the "'claims,' not particular claim

---

answer to legal questions," the clear and convincing evidence standard "has no application." *Microsoft Corp.* v. *i4i Ltd. P'ship*, 564 U.S. 91, 114 (2011) (Breyer, J., concurring). As noted above, indefiniteness is ultimately a question of law.

terms"). Claim 1 describes a device consisting of (i) an elongate member that can be gripped, and (ii) a securement means that can be mounted to help an individual out of a seat. ('189 patent, col. 13:48-62). The user can extend the device away from the seat and position the handle to provide support either by pulling or pushing on the device, which can be moved "to at least one operative position most convenient to the user when pulling or pushing on said handle." (*Id.*). Claim 2 describes a device, also with an elongate member and securement means, that can be used to get into or out of a car with a "pillar to one side of the seat that defines a lateral surface generally proximate to the individual." (*Id.* at col. 13:63-64). The device is removably secured to the surface, and the user can extend the device outside of the vehicle to gain support when exiting or entering by pulling or pushing on the device. (*Id.* at col. 14:1-10). Like the device in Claim 1, the device described in Claim 2 can be moved "to at least one operative position most convenient to the user when pulling or pushing on said handle." (*Id.* at 14:12-14).

On its own, the claim language is not illuminating. Plaintiff's suggestion that the Court construe the words in the disputed phrase in light of their plain meaning is unhelpful, for "[i]t cannot be sufficient that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Nautilus*, 134 S. Ct. at 2130. Thus, under *Nautilus*, it is of no import that the Court can understand the words in the claim term and assign them some definition — indeed, Defendant does not

argue that the words "operative position most convenient to the user" cannot be defined. The problem is that the language of Claims 1 and 2, even when read as a whole, does little to set objective boundaries on the "operative position" phrase. A person skilled in the art at the time of the patent application reading Claims 1 and 2 would understand that the patentee had the right to exclude all later inventions designed to be moved into "at least one operative position most convenient to the user." That much is evident. What cannot be discerned from the language of the claims as a whole is what the most convenient position is, and this is because that position will vary from user to user. So while a person skilled in the art may read Claims 1 and 2 and understand their plain meaning, this person would still lack adequate notice of the parameters of the patentee's rights. In this regard, "the claims leave a 'zone of uncertainty' — which *Nautilus* bars." *Core Wireless Licensing S.A.R.L.* v. *Apple Inc.*, No. 15 Civ. 5008 (PSG), 2016 WL 3124614, at *12 (N.D. Cal. June 3, 2016) (construing the claim term "substantially impair the quality of the user information" to be indefinite) (quoting *Nautilus*, 134 S. Cit. at 2129).

This case is unlike *BASF Corporation* v. *Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017), where the Federal Circuit reversed a finding of indefiniteness in the court below. There, the Federal Circuit reaffirmed that "an inventor need not explain every detail because a patent is read by those of skill in the art," and thus imprecision in claim terms that can be readily understood by an individual in the relevant field — that is to say, language that would not be imprecise when read by an inventor in the relevant field rather

than by lawyers and judges — is acceptable. *BASF Corp.*, 875 F.3d at 1366-67 (internal quotation marks and citations omitted). Here, however, the imprecision does not flow from technical terms or concepts that are understandable to those skilled in the relevant art. Only a user of the devices contemplated in Claims 1 and 2 of the '189 patent will ever know exactly where the boundary of the invention lies because only that user will know what position is most convenient.

The patent specification does little to help. Plaintiff excerpts portions of the specification that enumerate various factors affecting how the device may be most conveniently positioned by the user — for example, the type of car, the height of the car from the ground, the height of the user, and the particular disability of the user. (Pl. Br. 13-15). But Plaintiff's citations only instantiate Defendant's indefiniteness challenge. What the specification provides is a list of factors — not examples of convenient operative positions. Were a person skilled in the art to read Claims 1 and 2 together with the patent specification, this person would understand the factors that may make a position more or less convenient to a given user, but would have no objective means of measuring what position is most convenient to any given user, and would not be able to understand with reasonable certainly how to construct a non-infringing device.

On this score, the Court is persuaded by Defendant's argument at the *Markman* hearing regarding the Federal Circuit's guidance about the use of examples in a patent specification to define a claim term. (Oral Arg. Tr. 20:9-

12

25:11). In *Interval Licensing*, the court was presented with a patent specification that contained several examples of how images could be displayed in an "unobtrusive manner that does not distract a user." *Interval Licensing*, 766 F.3d at 1371-72. The court acknowledged that "a patent which defines a claim phrase through examples may satisfy the definiteness requirement," but nonetheless declined to "cull out a single 'e.g.' phrase from a lengthy written description to serve as the exclusive definition of a facially subjective term." *Id.* at 1373. The court held that the claim term "unobtrusive manner" was indefinite. *Id.* at 1374. Despite Plaintiff's attempts to distinguish the two cases — at the *Markman* hearing, Plaintiff argued that the specification provides "objective criteria" by which to define "operative position most convenient to the user" (Oral Arg. Tr. 34:2-35:15) — the Court finds that the '189 patent specification is, in fact, less specific, and less helpful, than that in *Interval Licensing*. Plaintiff is correct that factors like a user's height, weight, type of car, and type of physical impairment are objective data points, but these are not examples to which the Court can point for a definition of the disputed claim term. More to the present point, these data points might affect what is most *effective* for the user, but they do not speak at all to what that person, in his or her opinion, finds *convenient*.

Plaintiff's attempt to analogize this case to *Sonix Technology Co., Ltd. v. Publications International, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017), is similarly unavailing. At the *Markman* hearing, Plaintiff argued that "operative position most convenient to the user" is based on objective criteria just like the "visually

13

negligible" claim term in *Sonix* that the Federal Circuit found to be definite. (Oral Arg. Tr. 34:2-35:15, 57:3-24). *Sonix*, 844 F.3d at 1381. The *Sonix* court was persuaded by examples in the patent specification that showed a person skilled in the art how to construct an indicator that could not be seen by the normal human eye. *Id.* at 1378-79. The court found that "visually negligible" depended on an "objective baseline" of what could be seen by the human eye, and thus the claim term did not depend on "taste or preference" or a "value judgment that inherently varies from person to person." *Id.* at 1378; *cf. Datamize*, 417 F.3d at 1350-56 (finding "aesthetically pleasing" to be indefinite insofar as it "depend[ed] on the unpredictable vagaries of any one person's opinion"), *abrogated on other grounds by Nautilus*, 134 S. Ct. at 1230. The same is not true here. Whether a user believes an operative position to be convenient is dependent on their preferences, and this cannot be known or anticipated by persons skilled in the art.

Finally, the prosecution history does not shed light on the contours of what is meant by "convenient." As discussed in more detail below, the phrase "operative position most convenient to the user" was added to overcome the patent examiner's rejection of Claims 1 and 2 on the basis of prior art. So while the phrase successfully overcame the prior art objection, there was no discussion of the definiteness of the phrase during prosecution. Plaintiff argues that this is persuasive evidence that the term is sufficiently definite; after all, a patent examiner reviewed the term and did not object on the basis of indefiniteness. (Pl. Br. 13; Oral Arg. Tr. 42:2-19). Plaintiff's point is well taken

14

but ultimately unconvincing. Indeed, Plaintiff has conceded that this evidence is not dispositive: At oral argument, Plaintiff pointed to the *Sonix* case and argued that "[a]lthough ... application by the examiner and an expert do not, on their own, establish an objective standard, they nevertheless provide evidence that a skilled artisan did understand the scope of this invention with reasonable certainty." (Oral Arg. Tr. 53:16-22 (quoting *Sonix*, 844 F.3d at 1380)). The Court agrees that the examiner's approval of the language is evidence that a person skilled in the art understood the term, but this point does not overcome the Court's broader concerns that no person skilled in the art can ever know the exact scope of the patentee's rights based on the language of Claims 1 and 2 as drafted.

### 2. Extrinsic Evidence

The extrinsic evidence in the record does not move the needle in Plaintiff's favor. Defendant submitted a declaration from David McLellan — its expert before the Patent Trial and Review Board ("PTAB") — who states that "[i]n [his] opinion, [operative position most convenient to the user] does not convey the boundaries of what is claimed to a person of ordinary skill in the art with reasonable certainty," because there are "many scenarios in which positioning may be most convenient for one user, and completely inconvenient for another." (Dkt. #61-6 ¶¶ 40-41). As evidenced by the foregoing discussion, the Court agrees with McLellan.

Plaintiff points to Defendant's petition for *inter partes* review at the PTAB, and argues that McLellan failed to argue indefiniteness as a basis to invalidate

15

the patent in that forum despite Defendant's duty of candor and good faith to the PTAB. (Pl. Br. 11-13; *see also* Dkt. #60-6). Plaintiff again argues, as it did with respect to the prosecution history, that this is evidence that a person skilled in the art reviewed the claim language and understood it. (Pl. Br. 11-13). As above, the Court does not believe this evidence overcomes its greater concern with the viability of the claim language.

### 3. Effect of *Cox Communications, Inc.* v. *Sprint Communication Co.*

Plaintiff's last refuge is its argument that Claims 1 and 2 should stand if a person skilled in the art could read the claims without the disputed term and understand their meaning with reasonable certainty. (Oral Arg. Tr. 59:23-60:20). This argument is grounded in the Federal Circuit's decision in *Cox Communications, Inc.* v. *Sprint Communications Co. LP*, 838 F.3d 1224 (Fed. Cir. 2016). Plaintiff contends that *Cox* "stands for the proposition that even if a claim term is found indefinite, if it does not discernibly alter the claim scope, the claim is still valid." (Oral Arg. Tr. 60:1-3). But Plaintiff overplays its hand.

In response to pointed criticism from the concurring judge, the *Cox* court expressly disclaimed any charge that it "creat[ed] a 'new protocol' that hinges on 'deleting the challenged term from the claims.'" *Cox Commc'ns*, 838 F.3d at 1231 n.3 (quoting *id.* at 1234 (Newman, J., concurring)). Rather, the court clarified that it meant only to emphasize that claim terms should be read within the context of the entire claim to ascertain whether the term can "be a source of indefiniteness." *Id.* If, without the disputed claim term, the

16

remainder of the claim informs a person skilled in the art of the scope of the patent with reasonable certainty, the disputed term cannot be a source of indefiniteness. *Id.*

*Cox* does not help Plaintiff's argument. Here, the phrase "operative position most convenient to the user" is critical to defining the scope of the invention, and with it the boundaries of the patentee's rights. As Defendant notes, the phrase was added to overcome a rejection based on prior art. (Oral Arg. Tr. 70:1-15). Accordingly, what makes this invention distinctive from others is that it is a device that can be moved into "at least one operative position most convenient to the user when pulling or pushing on [the] handle." ('189 patent, col. 13:60-61, col. 14:12-14). In other words, the disputed claim term plays a discernible role in defining the scope of the claims such that a person of skill in the art could not understand the contours of the invention without it. The claim term is thus a possible — and, indeed, actual — source of indefiniteness in Claims 1 and 2 of the '189 patent. For this reason, these claims fail as indefinite.

## CONCLUSION

For the foregoing reasons, Claims 1 and 2 of the '189 patent are invalid for indefiniteness. The parties are directed to submit a joint letter to the Court by May 25, 2018, stating whether they intend to proceed with summary judgment motion practice and, if so, proposing a briefing schedule.

SO ORDERED.

Dated: May 11, 2018
         New York, New York

KATHERINE POLK FAILLA
United States District Judge