UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVENUE INNOVATIONS, INC.,

                    Plaintiff,

            -v.-

E. MISHAN & SONS INC.,

                    Defendant.

16 Civ. 3086 (KPF)

**SEALED OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff and patentholder Avenue Innovations, Inc., brought this action against Defendant E. Mishan & Sons Inc., alleging infringement of U.S. Patent No. 6,340,189 (the "'189 Patent"). The '189 Patent was issued in 2002, assigned to Plaintiff in 2003, and is embodied in a device produced by Plaintiff known as the HandyBar, which is used for assistance in getting into or out of a vehicle. In 2015, Defendant brought to market a device called the Car Cane, which is also used to assist individuals with entering and exiting a vehicle. This litigation ensued.

In 2018, the Court determined that Claims 1 and 2 of the '189 Patent were invalid due to indefiniteness. *See Avenue Innovations, Inc.* v. *E. Mishan and Sons Inc.*, 310 F. Supp. 3d 457 (S.D.N.Y. 2018). Plaintiff persisted, claiming that Defendant's device infringed Claims 3-8 and 20 of the '189 Patent (collectively, the "Disputed Claims"). Now before the Court are the parties' cross-motions for summary judgment as to infringement. For the reasons that follow, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion for summary judgment.

## A. Factual Background

### 1. The '189 Patent

On January 22, 2002, the '189 Patent, titled "Universal Device for Facilitating Movement into and out of a Seat," was issued to Dr. William Pordy; it was later assigned to Plaintiff on January 8, 2003. ('189 Patent; Pl. Ctr. 56.1 ¶ 1). The patent is for a "universal device" that can be used to facilitate

---

[1] All submissions in relation to the parties' cross-motions for summary judgment have been filed under seal, and they will be refiled in redacted form pursuant to the Court's instructions.

Each party has filed its own Statement of Material Facts Not in Dispute under Local Rule 56.1. The facts stated herein are drawn from Plaintiff's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Pl. 56.1"), and Defendant's Counter-Statement of Material Facts in response thereto ("Def. Ctr. 56.1"), the latter of which comprises both responses to Plaintiff's assertions of material facts not in dispute and material facts ostensibly in dispute. The Opinion also draws from Defendant's Local Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1"), and Plaintiff's Counter-Statement of Material Facts in response thereto ("Pl. Ctr. 56.1"), the latter of which comprises both responses to Defendant's assertions of material facts not in dispute and material facts ostensibly in dispute. Individual declarations are referred to using the convention "[Name] Decl." The Opinion refers to United States Patent No. 6,340,189 (the "'189 Patent" (Glass Decl., Ex. A)) and United States Patent No. 9,403,466 (the "Car Cane Patent" (*id.*, Ex. H)).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein. *See* Local Rule 56.1(d). Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true. *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For convenience, the Court refers to Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment as "Pl. Br.", Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment as "Def. Opp.", and Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment as "Pl. Reply." The Court refers to Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment as "Def. Br.", Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary judgment as "Pl. Opp.", and Defendant's Reply Memorandum of Law in Further Support of Its Motion for Summary Judgment as "Def. Reply."

movement into and out of a car seat.  (Pl. Ctr. 56.1 ¶ 10).  The patent is

composed of 23 claims.  As relevant here, Claims 3-8 and 20 provide as follows:

> 3.    Universal device for facilitating egress and/or ingress of any passenger and/or driver from a vehicle having a door opening through which said individual(s) can move into or out of a seat in the vehicle and having a post or pillar to one side of the seat that defines a lateral surface generally proximate to the individual and provided with a generally U-shaped striker mounted on said lateral surface for normally engaging a latch of a door lock when the door of the vehicle is closed, the striker extending in the direction of the door opening; the device comprises an elongate member having a handle at one end suitable for being gripped by the individual and securement means cooperating with the other end of said elongate member for removably securing said elongate member to said lateral surface to enable said elongate member to extend away from the lateral surface and position a portion of said handle exteriorly of the vehicle and for providing a support for the passenger to grip while entering or leaving said vehicle independently of whether the passenger pulls on said handle in a direction generally upwards or pushes on said handle in a direction generally downwards, said securement means comprising an engaging element at said other end of said elongate member for engaging the striker when the door is open and used by the passenger to move into or out of the seat of the vehicle.

> 4.    Device as defined in claim 3, wherein the striker defines a generally rectangular opening, said engaging element comprising an engaging portion dimensioned to extend through said rectangular opening.

> 5.    Device as defined in claim 4, wherein said engaging portion is tapered to generally provide an increasingly larger dimensions in the direction of said handle to provide a maximum dimension which cannot pass through said rectangular opening, whereby initial insertion of said engaging portion through said rectangular area is facilitated by a pointed edge of said tapered engaging portion and the extent of penetration through said rectangular area is a function of the

relative dimensions of said rectangular area and the taper portion on said engaging portion.

6. Device as defined in claim 5, wherein either the U-shaped or the rectangular shaped striker is formed of two spaced substantially parallel leg portions mounted on and extending from the lateral surface and a bridging portion extending between said leg portions and spaced from the lateral surface a distance W, and said engaging portion having a width less than W.

7. Device as defined in claim 5, wherein either the U-shaped or the rectangular shaped striker is formed of two spaced substantially parallel leg portions mounted on and extending from the lateral surface and a bridging portion extending between said leg portions and spaced from the lateral surface a distance W, and said engaging portion having a width approximately equal to W.

8. Device as defined in claim 6, wherein said leg portions are spaced a distance D and said taper in said engaging portion has a maximum dimension greater than D.

20. Device for facilitating ingress and/or egress of any passenger and/or driver from a vehicle having a door opening through which the individual can move into or out of a seat in the vehicle and having a post or pillar to one side of the passenger seat that defines a lateral surface generally proximate to the individual and a generally U-shaped striker mounted on the lateral surface defining an opening for normally receiving a latch of a door lock when the vehicle door is closed, the device comprising an elongate member having a handle at one end suitable for being gripped by the individual; and engagement means cooperating with the other end of said elongate member for cooperating with the striker when the door is open and for securing said elongate member to the striker to enable said elongate member to extend away from the vehicle and position said handle exteriorly of the vehicle and for providing support to the individual when entering or exiting the vehicle.

('189 Patent columns 14-16).

4

### 2.    Defendant's Car Cane Device

The Car Cane was developed by Defendant to assist elderly or infirm individuals in safely exiting cars.  (Pl. Ctr. 56.1 ¶ 12).  After the '189 Patent had been issued — and, indeed, even after the '189 Patent had been called to its attention by Defendant — the Patent and Trademark Office issued two utility patents and four design patents to Defendant for functional and ornamental aspects of the Car Cane.  (*Id.* at ¶ 16).

As relevant here, the Car Cane device consists of two joined pieces:  a handle to be gripped, and a "window breaker."  (Glass Decl., Ex. B).  The pieces are joined such that the window breaker extends at a near-right angle from one end of the handle, as shown in the following image:



(*Id.*).

The Car Cane device was designed so that the window breaker could be inserted into a car's "striker," the U-shaped metal mechanism attached to the frame of a car to which a car door latches to close and lock.  (Pl. Ctr. 56.1 ¶¶ 13-15).  According to Defendant, the Car Cane should be inserted into the

striker of a car such that its handle runs parallel to the car seat. (*Id.* at ¶ 13). When inserted in this orientation, a notch between the handle and the window breaker of the Car Cane rests on the striker, securing it so that a person can reliably place their weight on the handle when exiting the vehicle. (Glass Decl., Ex. B).[2] The Car Cane's handle extends out from the frame of a car door at approximately a 180-degree angle; no part of the device extends beyond the exterior metal paneling of the car. (*Id.*; Pl. Ctr. 56.1 ¶ 21). Defendant includes a set of instructions with each Car Cane sold that counsels purchasers to use the device in this way:



(Glass Decl., Ex. B; Pl. Ctr. 56.1 ¶¶ 19-21).

---

[2]     As discussed further *infra*, a protrusion at the top of the window breaker prevents the device from moving laterally in this position, further increasing stability.

Plaintiff does not contest that the Car Cane's instructions tell users to orient the device in this manner, with the handle running parallel to the car seat. (Pl. Ctr. 56.1 ¶¶ 19-21). Instead, Plaintiff alleges that the Car Cane may also be turned, so that the window breaker is partially inserted into a vehicle's striker and the handle runs perpendicular to the car seat. (*Id.* at ¶ 13). When used in this manner, the Car Cane handle would extend away from the car, with a portion of it protruding outside the car. (Def. Ctr. 56.1 ¶ 8).

### 3. Alleged Infringement

Plaintiff contends that Defendant's Car Cane teaches each limitation of each of the Disputed Claims, and, further, that Defendant has induced its retail partners to violate the '189 Patent by selling the Car Cane. Thus, Plaintiff alleges that Defendant has willfully infringed, both directly and indirectly, the '189 Patent in violation of 35 U.S.C. § 271(a)-(b). Defendant responds that the record establishes the converse: The Car Cane does not infringe any of the claims of the '189 Patent, and, indeed, was purposely designed, with the assistance of patent counsel, to avoid infringement.

## B. Procedural History

Plaintiff initiated this action on October 9, 2015, in the United States District Court for the Eastern District of Texas. (Dkt. #1). The case was transferred to this District on April 26, 2016. (Dkt. #47). The Court held a claims construction hearing under *Markman* v. *Westview Instruments, Inc.*, 517 U.S. 370 (1996), on June 22, 2017. (Dkt. #71 (transcript of hearing)). On September 16, 2017, the parties submitted a proposed order to the Court

regarding their agreed-upon construction of certain disputed claim language. (Dkt. #73). On May 11, 2018, the Court entered an Opinion and Order concluding that Claims 1 and 2 of the '189 Patent were invalid for indefiniteness. (Dkt. #77). On that same day, the Court entered a claim construction order. (Dkt. #78). On October 15, 2018, Plaintiff filed an amended set of asserted claims and infringement contentions, claiming that Defendant had violated Claims 3-8 and 20 of the '189 Patent. (Dkt. #85).

On October 30, 2018, Plaintiff and Defendant submitted their cross-motions for summary judgment. (Dkt. #88, 89). On November 28, 2018, each party submitted its opposition papers to the other party's motion for summary judgment. (Dkt. #90, 91). The motions became ripe for decision when the parties submitted their reply papers on December 13, 2018. (Dkt. #92, 93). With the Court's permission, all papers regarding the cross-motions for summary judgment were submitted under seal.

On September 10, 2019, the Court filed an unredacted copy of this Opinion under seal. On that same day, the Court provided the parties with a copy of the unredacted Opinion and allowed the parties to propose redactions. Pursuant to the Court's directions, the parties will file their materials publicly by October 1, 2019, with certain limited categories of information redacted in accordance with *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). On that date, the parties will also file a joint letter suggesting redactions to the Opinion. Taking the parties' suggestions into consideration,

the Court will then file a redacted version of the Opinion on the public docket. The Court now considers the pending cross-motions for summary judgment.

**DISCUSSION**

**A.    Applicable Law**

    **1.    Summary Judgment Under Federal Rule of Civil Procedure 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).[3]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than

---

[3]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refers to "genuine issues of material fact."

simply show that there is some metaphysical doubt as to the material facts,"
*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Though [the Court] must accept as true the allegations of the party defending against the summary judgment motion ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita*, 475 U.S. at 587; *Wyler* v. *United States*, 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks*, 593 F.3d at 166.

## 2. Patent Infringement

Infringement analysis is a two-step process: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) (citation omitted), *aff'd*, 517 U.S. 370 (1996); *accord Indivior Inc.* v. *Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019); *N. Am. Container, Inc.* v. *Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005).

Claim construction, the first step in the infringement analysis, is a matter of law. *See Markman*, 52 F.3d at 979; *see also Auto-Kaps, LLC* v. *Clorox Co.*, No. 15 Civ. 1737 (BMC), 2016 WL 6988834, at *2 (E.D.N.Y. Nov. 29, 2016) ("Claim construction is a question of law exclusively for the courts to resolve, whereas determining whether a particular device infringes a properly construed claim is a question of fact usually within the jury's purview." (internal citations omitted)). Courts determine the scope of a claim by applying well-known principles of claim construction and examining three relevant sources: the language of the claim, the specification, and the prosecution history. *See Vitronics Corp.* v. *Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996); *see generally Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005).

To determine the proper meaning of patent claim terms, courts look first to intrinsic evidence — the patent and its prosecution history — but they may also consider extrinsic evidence, such as expert testimony, dictionaries, and

treatises. *Phillips*, 415 F.3d at 1317. Patent claims "are generally given their ordinary and customary meaning," which the Federal Circuit has explained is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (citations omitted). A "person of ordinary skill in the art" is an inventor or "others of skill in the pertinent art" who are "deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

The claims themselves provide "substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. As noted, the Federal Circuit counsels district courts to review disputed claim terms in light of the patent as a whole, in order to avoid inconsistent usage of claim terms, and the particular specification, which "is the single best guide to the meaning of a disputed term." *Id.* at 1315. But while the specification is an important guide to interpreting claim terms, a court may not "import[] limitations from the specification into the claim," a line that the Federal Circuit has acknowledged is a fine one. *Id.* at 1323 (citing *Comark Commc'ns, Inc.* v. *Harris Corp.*, 156 F.3d 1182, 1186-87 (Fed. Cir. 1998)).

With respect to the second step of infringement analysis, infringement may be committed either directly or indirectly. 35 U.S.C. § 271(a)-(b). To establish direct infringement, "every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent."

*Becton Dickinson and Co.* v. *C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).

"It is well settled that an accused device that sometimes, but not always, embodies a claim[] nonetheless infringes." *Broadcom Corp.* v. *Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (alteration in original) (quoting *Bell Commc'ns Research, Inc.* v. *Vitalink Commc'ns Corp.*, 55 F.3d 615, 622-23 (Fed. Cir. 1995)).

To state a claim for induced infringement, a plaintiff must demonstrate that the defendant: (i) had knowledge of the patent-in-suit; (ii) knew the induced acts were infringing; and (iii) specifically intended to encourage another's infringement. *Commil USA, LLC* v. *Cisco Systems, Inc.*, 135 S. Ct. 1920, 1926 (2015). "[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (internal quotation marks and citation omitted); *see also Glob.-Tech Appliances, Inc.* v. *SEB S.A.*, 563 U.S. 754, 766 (2011) ("Accordingly, we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."). Further, "inducement liability may arise if, but only if, [there is] ... direct infringement" by another party. *Limelight Networks, Inc.* v. *Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (citation omitted).

"If the parties only dispute claim construction and do not dispute relevant facts concerning the structure and operation of the accused products, 'the question of literal infringement collapses into claim construction and is

amenable to summary judgment.'" *Mirror Worlds Tech., LLC* v. *Facebook, Inc.*, 320 F. Supp. 3d 538, 543 (S.D.N.Y. 2018) (quoting *Gen. Mills, Inc.* v. *Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997)). This second step of infringement analysis is a question of fact, and therefore summary judgment on a claim of literal infringement issue is appropriate "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai* v. *L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

The existence of cross-motions on the issue of infringement alters the Court's analysis as a technical matter, but not as a practical one. In proving infringement, "[t]he patentee bears the burden of proving infringement by a preponderance of the evidence." *SRI Int'l* v. *Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985). Thus, when a plaintiff moves for summary judgment on this point, the plaintiff must prove that no genuine dispute of material fact exists as to any of the elements of infringement. In contrast, when a defendant moves for summary judgment on a counterclaim of non-infringement against the patentee, the defendant bears an initial burden that is discharged by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Exigent Tech. Inc.* v. *Atrana Solutions, Inc.*, 442 F.3d 1301, 1308 (Fed. Cir. 2006) (quoting *Celotex*, 477 U.S. at 325).

Given the near-complete overlap of arguments in the cross-motions, it is largely immaterial whether the Court conducts the analysis from the perspective of Plaintiff's claims of infringement or Defendant's claims of non-infringement.  When the Court concludes, as it does in this Opinion, that summary judgment is warranted in Defendant's favor, it is simultaneously finding that Plaintiff has not identified a genuine dispute of material fact as to direct or indirect infringement, and that Defendant has identified for the Court the absence of such a dispute of fact.[4]

## B.     Analysis

As noted, Plaintiff alleges that Defendant's production and sale of the Car Cane directly and indirectly infringes the '189 Patent.  In so doing, however, Plaintiff takes liberties with the language of the Disputed Claims and with its own stipulations.  When the relevant claim limitations are properly construed, the absence of infringement is clear.

### 1.    Defendant Is Entitled to Summary Judgment on the Issue of Direct Infringement

Plaintiff contends that the Car Cane is capable of being used, and is in fact used, in two ways that directly infringe the '189 Patent:

(i)     the handle can be oriented such that, when the window breaker is inserted into the striker, the handle runs parallel to the car seat, extending away from the door frame at a roughly 180-degree angle (the "parallel orientation"), as shown below:

---

[4]     Similarly, for ease of analysis, the Court considers the Disputed Claims as a whole, even as it recognizes that Plaintiff's affirmative motion for summary judgment concerns only a subset of them.



(Pl. Opp. 16-17; Glass Decl., Ex. B); and

(ii)     the handle can be oriented such that, when the window breaker is inserted into the striker, the handle runs perpendicular to the car seat, extending away from the door frame at a roughly 90-degree angle towards the exterior of the car (the "perpendicular orientation"), as shown below:



(Pl. Opp. 16-17; Def. Ctr. 56.1 ¶ 8).  And as a third, hybrid infringement argument, Plaintiff alleges that the Car Cane infringes the '189 Patent if it is first inserted in the striker in the parallel orientation and is then moved to the

perpendicular orientation (the "parallel-then-perpendicular orientation"). (Pl. 56.1; Dkt. #85).[5]

Defendant rejoins that the Car Cane does not directly infringe the '189 Patent in any of these orientations. To begin, Defendant claims that, whether the Car Cane is oriented to be parallel or perpendicular to the car seat, the device does not embody all of the limitations of any of the Disputed Claims. What is more, Defendant argues, even if the Car Cane could infringe the '189 Patent if used in the perpendicular or the parallel-then-perpendicular orientation, there is no admissible evidence that the Car Cane *is* used in this way, and thus no reasonable jury could find infringement. The Court agrees with Defendant. No genuine dispute of material fact exists concerning Plaintiff's claims of direct infringement, and Defendant is entitled to judgment as a matter of law.

> ### a. The Car Cane Does Not Embody All the Limitations of Any Disputed Claim When Used in the Parallel or Perpendicular Orientations

For a device to directly infringe a patent, the device must contain each limitation set forth in a claim, exactly or through a substantial equivalent. Because the parties agree as to the construction of most of the limitations of

---

[5] Defendant argues that Plaintiff has only alleged infringement when the Car Cane is used in the parallel-then-perpendicular orientation. (Def. Br. 11-12; Def. Reply 1). And, indeed, Plaintiff's First Supplemental Disclosure of Asserted Claims and Infringement Contentions (Dkt. #85), does not make clear whether it alleges infringement if the Car Cane is: (i) used in the parallel orientation *or* the perpendicular orientation; or (ii) is placed *first* in the parallel orientation and *then* in the perpendicular orientation. For purposes of this Opinion, however, the Court will accept Plaintiff's explanation of its infringement contentions, according to which Plaintiff alleges infringement if the device is used in any of the parallel, perpendicular, or parallel-then-perpendicular orientations. (Pl. Opp. 16-21).

the Disputed Claims, the Court focuses on two features common to the Claims that are the subjects of the parties' motions:

(i) Claims 3-8 and 20 require that at least a portion of the handle be positioned "exteriorly of the vehicle" when the device is in use ('189 Patent columns 14-16); and

(ii) Claims 3-8 require a "securement means comprising an engaging element," while Claim 20 requires an "engagement means" to secure the device to the car when in use (*id.*).

As Defendant argues, whether the Car Cane is used in the parallel or perpendicular orientation, it does not teach either of these claim limitations.

### i. When in the Parallel Orientation, the Car Cane Handle Is Not Positioned "Exteriorly of the Vehicle"

When the Car Cane is used in the parallel orientation — the orientation prescribed by the instructions included with every device sold — the car door is open, and the Car Cane extends out from the striker at approximately a 180-degree angle. The entire handle of the device is positioned within the well of the car door, and no portion of the handle extends beyond the car's exterior metal paneling. (Def. Reply 3-5). Plaintiff does not contest these facts, which are illustrated by the images immediately below:



(Glass Decl., Ex. B; Def. Ctr. 56.1 ¶¶ 1-7).

But while the parties agree on these core facts, they urge different legal conclusions based on competing interpretations of the limitation that requires the handle be at least partially "exteriorly of the vehicle." Defendant argues that the handle is not "exteriorly of the vehicle" unless some portion of the handle is outside the car. (Def. Reply 3-5). Plaintiff urges a broader definition, by which anything that is not within the passenger compartment of the vehicle is "exteriorly of the vehicle" for purposes of the '189 Patent. (Pl. Opp. 15-17).

To support its argument, Plaintiff cites to an image contained within the '189 Patent:



('189 Patent at 2). The portion of the image that is labeled 18 is defined as the "interior passenger compartment [] that can be accessed by means of a door

opening 20 that is normally closed by a door (not shown)." (*Id.* at column 6). Plaintiff also provides a declaration from expert witness Robert L. Hoekstra, Ph.D, M.Des., who opines that "'interior' in the automotive industry is the passenger compartment with the dividing line defined by the cabin seal." (Hoekstra Decl. ¶ 15). According to Dr. Hoekstra, a person with "ordinary skill in the art in the automotive industry" would consider everything outside of the interior passenger compartment to be exterior to the vehicle. (*Id.*). By this definition, both the striker and the Car Cane, whether it is in the parallel or perpendicular position, are "exterior" to the vehicle, because they are outside the passenger compartment.

The parties' dispute distills to a disagreement over how to construe the "exteriorly of the vehicle" limitation, and it is thus ripe for summary judgment. *Gen. Mills, Inc.*, 103 F.3d at 983 (finding that disputes over claim construction are "amenable to summary judgment"). As it happens, however, the Court need not decide which proffered construction is correct, because the parties have already done so: On May 11, 2018, the Court granted the parties' Joint Motion for Entry of Claim Construction, wherein they stipulated that "exteriorly of the vehicle" meant "outside the vehicle." (Dkt. #78-1). Dr. Hoekstra's declaration, submitted for the first time with Plaintiff's Opposition, thus does nothing to alter the Court's claim construction (or the effect of the parties' stipulation) that "outside the vehicle" is the ordinary and customary meaning of the phrase "exteriorly of the vehicle." *See Renishaw PLC* v. *Marposs Societa' Per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("Absent a special and

particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning.").[6]

Applying this construction to the uncontested facts, a reasonable juror could not find that a car's striker is outside of the car. The striker is attached to the car door frame, within the exterior walls of the car. When a car door is closed, the striker is sealed off from the outside world by the metal covering the car door; a person standing outside of the car could not touch the striker. When the Car Cane is used in the parallel orientation, the device extends out from the striker at a near-180-degree angle and exists in the same plane as the striker. No part of the device's handle extends beyond the exterior walls of the car. Thus, there is no genuine dispute that the Car Cane, when placed parallel to the seats, is not exteriorly of the vehicle. More to the point, when used in this way, the Car Cane does not teach all of the limitations of Claims 3-8 or 20, and thus does not infringe any of them.

ii. **When in the Perpendicular Orientation, the Car Cane Handle Does Not Utilize a Securement or Engagement Means**

For different reasons, Plaintiff claims that the Car Cane infringes the '189 Patent when it is used in the perpendicular orientation. (Pl. Opp 17). To review, when employed in this manner, the handle of the Car Cane runs

---

[6]     Apart from Dr. Hoekstra's testimony, no other evidence suggests that everything not within the interior passenger compartment of a vehicle is "outside the vehicle." Nor would such a construction of "outside the vehicle" comport with the plain meaning of the phrase itself. An item placed in the trunk of a car is inside of the car, even though it is not within the interior passenger compartment.

perpendicular to the car seat, extending out from the door frame and towards the exterior of the car.

In the perpendicular orientation, a portion of the Car Cane's handle is indisputably outside the vehicle. (Def. Reply 5-6). Thus, the Car Cane satisfies the "exteriorly of the vehicle" limitations of the Disputed Claims. But there are other limitations to be considered, including in particular requirements that the device have a "securement means" or "engagement means" to secure the device to the striker when in use. ('189 Patent columns 14-16). Specifically, Claims 3-8 require a

> securement means ... for removably securing [the device] to [the car frame] ... for providing a support for the passenger to grip while entering or leaving said vehicle ... said securement means comprising an engaging element ... for engaging the striker when the door is open and used by the passenger to move into or out of the seat of the vehicle.

(*Id.*). Claim 20 similarly requires an "engagement means ... for cooperating with the striker when the door is open and for securing [the device] to the striker ... for providing support to the individual when entering or exiting the vehicle." (*Id.*). Defendant claims that, when the Car Cane is used in the perpendicular orientation, the device's securement or engagement means is unable to cooperate with the striker, preventing the device from embodying all of the Disputed Claims' limitations. (Def. Reply. 6). The Court agrees.

Plaintiff alleges that the Car Cane has a securement means or engaging member that is "equivalent" to that described in the '189 Patent. (Pl. Br. 15).

According to Plaintiff, this equivalent component takes the form of a notch where the window breaker meets the handle of the Car Cane, as shown below:



(Def. Ctr. 56.1 ¶¶ 8, 18).  When the Car Cane is held parallel to a car seat and the window breaker is inserted into the striker, the notch rests on the striker, securing the device as shown below:



(Glass Decl., Ex. B).

Significantly for purposes of Plaintiff's argument, however, the same is *not* true when the Car Cane is used in the perpendicular orientation.  The

device flares outward where the handle and the window breaker meet, creating a pair of "wings":



FIG. 1          FIG. 3

(Car Cane Patent 3; Def. Br. 6-7). When the Car Cane is in the perpendicular orientation, this protrusion inhibits the user from aligning the window breaker directly above the striker, making it impossible to insert the window breaker fully into the striker as shown below:





(Def. Ctr. 56.1 ¶ 8).

Because the window breaker cannot be fully inserted, the notched securement or engagement means equivalent does not touch the striker, cannot cooperate with it, and does not removably secure the device. Unsurprisingly, Plaintiff presents no support for its conclusory assertion that the securement or engagement means equivalent of the Car Cane is engaged when the device is used in the perpendicular orientation. (Pl. Opp. 16-17). It is not — by design.[7] Thus, the Car Cane does not embody all of the limitations of the Disputed Claims when used in the perpendicular orientation.

---

[7] Defendant has introduced undisputed evidence that the Car Cane was specifically designed to stop the device from being used in the perpendicular orientation. (Def. Br. 6-8 (citing Car Cane Patent column 4:19-37)). Because the Car Cane was not meant to be used in the perpendicular orientation, Defendant says, the device would have to be "altered" from its intended use for it be used in the perpendicular orientation. (*Id.*). Defendant cites to a number of cases for the proposition that a device does not infringe if it must be altered to meet all of a patent's limitations. (*Id.* (citing *Ball Aerosol & Specialty Container, Inc.* v. *Limited Brands, Inc.*, 555 F.3d 984, 994-95 (Fed. Cir. 2009); *High Tech Medical Instrumentation, Inc.* v. *New Image Indus. Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995); *Accent Packaging, Inc.* v. *Leggett & Platt, Inc.*, 707 F.3d 1318, 1327 (Fed. Cir. 2013); *Telemac Cellular Corp.* v. *Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001))). Even if the Car Cane did meet the securement or engagement means limitations when used in the perpendicular orientation, Defendant maintains, it would not infringe any claim of the '189 Patent because this was not the device's intended use.

In fact, the cases cited by Defendant are inapposite here. The court in *Ball Aerosol & Specialty Container, Inc.*, found no infringement, not because a modification would have been outside the device's intended use, but because there was no evidence that the device had ever been modified to infringe. 555 F.3d at 994-95. And in *High Tech Medical Instrumentation, Inc.*, *Accent Packaging, Inc.*, and *Telemac Cellular Corp.*, the structure or programmatic coding of the allegedly infringing device had to be physically or substantively modified to make it capable of infringement. 49 F.3d at 155; 707 F.3d at 1327; 247 F.3d at 1330. Here, a user need not physically alter the Car Cane to use it in the perpendicular orientation. However, and as described in the text, the absence of modifications to the Car Cane ensures that the notch on the window breaker cannot suffice as a securement or engagement means when the device is in the perpendicular position.

### b.  Plaintiff Fails to Raise a Triable Issue of Fact That the Car Cane Is Used in the Perpendicular or Parallel-then-Perpendicular Orientations

A different reason exists to grant summary judgment in Defendant's favor as to any claim that the Car Cane violates the '189 Patent when used in the perpendicular or parallel-then-perpendicular orientations:  There is no admissible evidence that the Car Cane is ever used in the perpendicular orientation.[8]

"In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit."  *ACCO Brands, Inc.* v. *ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).  As discussed *supra*, the Court has concluded that the Car Cane does not infringe the '189 Patent when used in the parallel orientation, so the device does not "necessarily infringe[ ]" the patent.  Plaintiff is thus required to identify specific instances in which the Car Cane has been used in the allegedly infringing perpendicular orientation.

Plaintiff has failed to do so.  The only indications that the Car Cane has been used in the perpendicular orientation come from: (i) pictures of two individuals holding the device perpendicular to a car seat, submitted as part of Plaintiff's infringement contentions (Dkt. #85, Ex. 1); and (ii) a screenshot of comments left on the Amazon.com webpage for the Car Cane, from unidentified individuals claiming the device had been used in the perpendicular orientation

---

[8]    On the other hand, it is uncontested that the Car Cane is used in the parallel orientation, as customers are instructed to do in the instructions Defendant includes with each device sold.  (Pl. Ctr. 56.1 ¶¶ 19-21; Glass Decl., Ex. B).

(Hoekstra Decl., Ex. B). Neither piece of evidence sufficiently establishes that the Car Cane is used in the perpendicular orientation.

*First*, the record establishes that the pictures included in Plaintiff's infringement contentions do not depict actual users of the Car Cane employing the device in the way they normally would. Instead, Plaintiff's CEO acknowledged that he directed both of the individuals in the pictures to pose with the Car Cane, holding the device so that it was perpendicular to the car seat. (Def. Br., Ex. O 162:20-164:25). Thus, the pictures contain no evidence that actual users have operated the Car Cane in the allegedly infringing manner. *See ACCO Brands, Inc.*, 501 F.3d at 1312-13 (concluding that testimony by a plaintiff's expert that he had used the device in the allegedly infringing manner was not evidence that the device is actually used in the infringing manner). At most, the pictures establish that the Car Cane may be capable of being used in the perpendicular orientation, although the preceding description of the "wings" suggests otherwise. But "it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd.* v. *Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

*Second*, the Amazon.com comments do not sufficiently evince specific instances of the Car Cane being used in the allegedly infringing manner. This evidence was submitted for the first time with Plaintiff's opposition papers, more than two months after the close of fact discovery. (Hoekstra Decl., Ex. B). *See Codename Enter., Inc.* v. *Fremantlemedia N.A., Inc.*, No. 16 Civ. 1267 (AT)

27

(SN), 2018 WL 3407709, at *2-3 (S.D.N.Y. Jan. 12, 2018) (granting motion to strike evidence from consideration during adjudication of a summary judgment motion where the evidence was produced for the first time after the close of discovery).  Further, the evidence was not presented in Plaintiff's Rule 56.1 statement, but rather was submitted as an exhibit to Plaintiff's expert's declaration.  *See id.* at *10 n.5 (declining to consider documents submitted only as an exhibit and not in the Rule 56.1 statement because "[a] court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements" (quoting *Charter Oak Fire Ins. Co.* v. *Tri-Cty. Fire & Safety Equip. Co.*, 636 F. Supp. 2d 193, 197 (E.D.N.Y. 2009))).

More fundamentally, the screenshot is not itself admissible evidence. The webpage comments contain out-of-court statements, offered for the truth of the matters asserted, from unidentified individuals, and are therefore plainly hearsay.  *See* Fed. R. Evid. 801.  Plaintiff has not argued that the evidence falls within any exception to the hearsay rule, and the Court finds no applicable exception.  Because the Amazon.com comments are inadmissible, the Court will not consider them in adjudicating the cross-motions for summary judgment.  *Raskin* v. *Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

Plaintiff has failed to present evidence — circumstantial or otherwise — of specific instances in which the Car Cane was used in the allegedly-infringing

perpendicular orientation.[9]  Accordingly, even if the Car Cane taught all of the limitations of any Disputed Claim when used in this manner, Plaintiff has failed to create a triable issue that direct infringement has occurred.

In sum, no genuine dispute of material fact exists regarding Plaintiff's direct infringement claim.  The Car Cane does not embody the limitations of any of the Disputed Claims, whether it is used in the parallel or perpendicular orientation.  And, in fact, no admissible evidence has been introduced that the Car Cane has been used in the perpendicular or parallel-then-perpendicular orientations.  Accordingly, Defendant is entitled to summary judgment on the issue of direct infringement.[10]

---

[9]     Plaintiff contends that circumstantial evidence would be sufficient to establish specific instances of infringement.  (*See* Pl. Opp. 19-21).  The Court does not disagree.  *See Moleculon Research Corp.* v. *CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based only on circumstantial evidence).  But no admissible circumstantial evidence has been presented to the Court.

[10]    Plaintiff feints at an argument under the doctrine of equivalents, and the Court therefore discusses the concept briefly here.  "The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality."  *Sage Prod., Inc.* v. *Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997).  In other words, if "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patent[ ]," the patentee may show infringement even where, literally, the accused product lacks some claim limitation.  *Crown Packaging Tech., Inc.* v. *Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).  While adverting to the concept, however, Plaintiff does not advance an argument under it, and the Court will not therefore engage in an equivalents analysis.  (*See* Pl. Br. 14-15 (outlining legal standards for doctrine of equivalents); *id.* at 15 ("As shown in AI's Local Civil Rule 56.1 Statements of Material Facts on Motion for Summary Judgment of Patent Infringement, the Accused Products meet all the claim limitations of Claims 3, 4, and 20 of the '189 Patent literally or under the doctrine of equivalents."); Pl. Reply 2-3 ("In addition to literal infringement, an accused device can infringe under the doctrine of equivalents." (collecting cases)); Pl. Opp. 14-15 (outlining legal standards for doctrine of equivalents)).

**2.    Defendant Is Entitled to Summary Judgment on Plaintiff's Indirect Infringement Claim**

The parties have also cross-moved for summary judgment on Plaintiff's claim that Defendant's indirectly infringed the '189 Patent by inducing its retail partners to sell the infringing Car Cane product.  Once again, the Court agrees with Defendant.

In order to state a claim for induced infringement, "the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *MEMC Elec. Materials Inc.* v. *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005); *accord Water Techs. Corp.* v. *Calco, Ltd.*, 850 F.2d 660, 667 (Fed. Cir. 1998), *cert. denied*, 488 U.S. 968 (1988); *see also Metro-Goldwyn-Mayer Studios Inc.* v. *Grokster Ltd.*, 545 U.S. 913, 936 (2005) (noting that inducement is present where "'active steps … taken to encourage direct infringement,' such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe").  Plaintiff has satisfied neither criterion here.

*First*, and dispositive of the point, the Court concludes that Plaintiff has failed to raise a triable issue of direct infringement.  And *second*, even if the Car Cane could be said to infringe the '189 Patent, the record is insufficient to permit a reasonable jury to find that Defendant specifically intended to encourage another's infringement.  To establish this required mental state, the Plaintiff must prove that "[D]efendant knew the acts were infringing."  *Commil*

*USA, LLC* v. *Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015).  Plaintiff has failed

to introduce any evidence that Defendant intended third parties to engage in

acts that Defendant knew infringed the '189 Patent, or even that Defendant

willfully blinded itself to such knowledge.  *See generally SIMO Holdings Inc.* v.

*Hong Kong uCloudlink Network Tech. Ltd.*, 376 F. Supp. 3d 369, 390 (S.D.N.Y.

2019) ("Willful blindness is a permissible means of proving the knowledge

element of induced infringement.").

   The evidence of record establishes that Defendant intended that third

parties would use the Car Cane in the parallel, not the perpendicular,

orientation.  (Pl. Ctr. 56.1 ¶¶ 19-21; Pl. Opp. 23; Car Cane Patent column 4:19-

27).  Defendant in fact designed the Car Cane with the goal of making it

impossible to use in the perpendicular orientation — precisely to stave off

claims of infringement.  (*Id.*).  At most, Defendant could be said to have

intended to encourage infringement *if* the Car Cane infringed the '189 Patent

when used in the parallel orientation.  But even if that were true, and the

Court has found that it is not, there is no genuine dispute that Defendant

believed the Car Cane was non-infringing when used in that way.

   Before Defendant developed the Car Cane, it sought the advice of counsel

to ensure that the device did not infringe the '189 Patent.  (Pl. Ctr. 56.1 ¶¶ 45-

51).  Defendant's counsel advised that the Car Cane would not infringe in the

parallel orientation.  (*Id.*).  And after Plaintiff contacted Defendant, claiming the

Car Cane infringed the '189 Patent, Defendant against sought the advice of

counsel.  (*Id.* at ¶¶ 52-58).  In a 58-page letter, counsel advised Defendant that

the Car Cane did not infringe because each of the claims comprising the '189 Patent included limitations that the Car Cane could not meet.[11]  This evidence, coupled with the dearth of any countervailing evidence, forecloses a genuine dispute that Defendant believed the Car Cane infringed the '189 Patent.  *See Braun Inc.* v. *Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) (holding that "[o]n-going consultation with a patent lawyer is highly probative evidence of good faith" for purposes of determining whether patent infringement was willful).

Plaintiff seeks to find a genuine dispute of fact regarding Defendant's intent by citing: (i) evidence that Defendant intended the Car Cane to compete with products created under the '189 Patent (Pl. Reply 10; Pl. Opp. 24-25); and (ii) the purported incompetence of patent counsel's opinion concerning infringement (*id.*).  The Court disagrees on both fronts.  The fact that Defendant designed a product to compete with the '189 Patent does not indicate that Defendant believed the product would infringe.  Competitors are encouraged to design around each other's patents in a way that avoids infringement.  *TiVo Inc.* v. *EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) ("The analysis may also take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation.").  And, in designing a

---

[11]    The letter also advised Defendant that there was no infringement because the '189 Patent was invalid.  (Pl. Ctr. 56.1 ¶3).  The Supreme Court has clarified that belief in the invalidity of a patent is not a defense to a claim of induced infringement.  *Commil USA, LLC* v. *Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928-30 (2015).

product in conjunction with advice from counsel well-versed in patent law, Defendant intended to avoid infringement.

Further, the Court's own conclusion that the Car Cane did not infringe, and the logic supporting that conclusion, establishes that counsel's advice was not plainly incompetent. At the very least, the advice was not so deficient that Defendant must have been "willfully blind" to its incorrectness. *See Global-Tech Appliances, Inc.*, 563 U.S. at 766 ("[I]nduced infringement under § 271(b) requires knowledge," or willful blindness to the fact, "that the induced acts constitute patent infringement.").

No genuine dispute of material fact exists concerning whether Defendant infringed the '189 Patent, or whether Defendant intended to encourage third parties to engage in acts it knew would infringe the '189 Patent. The Court concludes that Defendant is entitled to summary judgment on Plaintiff's claim of indirect infringement through inducement.[12]

---

[12] Given the Court's finding of non-infringement, it does not further analyze Defendant's argument that it cannot be held liable for direct or indirect infringement because it "does not make, use, or sell the entire 'patented invention,'" inasmuch as it did not make either the vehicle or the striker. (*See* Def. Br. 19).

The Court's resolution of the cross-motions also obviates the need to address the issue of willfulness. In this regard, Plaintiff argues that it is entitled to treble damages on its infringement claims because Defendant knowingly and willfully infringed. (Dkt. #23 at ¶¶ 23, 32). Upon a finding of infringement, a court "may" award up to treble damages. 35 U.S.C. § 284. This increase in damages is "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," such as willful or deliberate infringement. *Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016); *see generally Georgetown Rail Equip.* v. *Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017) (discussing factors to consider in imposing enhanced penalties for infringement). Because the Court finds that no direct infringement occurred, it need not address Plaintiff's arguments concerning the willfulness of any infringement. That said, the Court notes that many of the facts that underlay its finding that Defendant lacked the requisite intent to induce infringement also militate against a finding of willfulness.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is directed to terminate all pending motions, including the motion at docket entry 11. The parties' redacted submissions are to be filed on or before October 1, 2019; that same day, the parties will jointly propose redactions to this Opinion.

SO ORDERED.

Dated:     September 10, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge